UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| DEMOND HUGHES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:04-CV-281 PS |
| | ) | |
| CECIL DAVIS, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

*Pro se* petitioner, Demond Hughes, an inmate at the Indiana State Prison ("ISP") in Michigan City, Indiana, has petitioned this Court to issue a writ of habeas corpus pursuant to 28 U.S.C. §2254 due to errors that allegedly occurred related to a prison disciplinary hearing conducted on November 19, 2003. The Response filed on behalf of the Respondent by the Attorney General of Indiana demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). In its response, the Attorney General of Indiana has submitted the entire administrative record including documents designated A through Q, which set out the underlying procedures in this conduct adjustment board ("CAB") proceeding. The Petitioner did not file a traverse.

The Petitioner claims that the State violated his constitutional rights in three ways: that there were two violations of IDOC Offender Urine Testing Policy, and his due process rights were violated because he was given the test during a religious fast which prevented him from drinking water from sunrise to sunset.

### FACTUAL BACKGROUND

The ISP recognizes the Petitioner as a Muslim. During the holy month of Ramadan, the ISP allows Muslims to eat breakfast before sunrise in accordance with their religious practices because

Muslims are to fast from sunrise to sunset. On November 2, 2003, during Ramadan, at about 7:45 a.m., Hughes was ordered to provide a urine sample for routine drug testing. Sgt. Boyan gave Hughes an 8 oz. cup, watched him go to the water fountain to fill it and witnessed him drink it. (*See* Ex. A & Ex. F.) Officer Calhoun also witnessed Hughes drink the cup of water. (*See* Ex. B.) There is nothing in the record that indicates that Hughes refused to drink the water or said to the officers that he was not to drink water because he was fasting due to Ramadan.

Hughes was given two hours to submit a thirty milliliter urine sample for testing. This test was conducted shortly after Hughes had eaten breakfast, which took place before sunrise which was at approximately 6:30 a.m. Two hours later, Hughes had only provided fifteen milliliters of urine, an insufficient amount for testing. (*See* Ex. A.) As a result, Sgt. Boyan wrote up a conduct report specifying that Hughes's "Refusal to provide an adequate specimen for testing purposes." (*Id.*)

Hughes was notified of the disciplinary charge on November 5, 2003. Hughes requested a lay advocate, and Chaplin Salisbury as a witness. The CAB hearing was held on November 19, 2003. The CAB found Hughes guilty based on the conduct report, staff reports, evidence from witnesses, the chain of custody report, and Hughes's own statement. The CAB then imposed a loss of 90 days earned credit time. Hughes appealed to the Facility Head and Final Reviewing Authority without success.

**STANDARD OF REVIEW**

As the loss of good time credit is a "liberty" interest protected by the Fourteenth Amendment to the Constitution, it triggers the applicability of *Wolff v. McDonnell*, 418 U.S. 539 (1974), and requires certain procedural steps. Due process requires that Hughes be given: (1) advance written notice of the charges against him at least 24 hours before the hearing; (2) an opportunity, when

2

consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. *Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994) (citing *Wolff*, 418 U.S. at 563-67); *Hoskins v. McBride*, 202 F. Supp. 2d 839, 843 (N.D. Ind. 2002). For the hearing to be meaningful, the prisoner should also be afforded an opportunity to be heard before an impartial decision maker. *Henderson*, 13 F.3d at 1077.

## DISCUSSION

Hughes alleges that his constitutional rights were violated. He claims: 1) that he was not given the full two hours to produce a sample in violation of the testing policy; 2) that he couldn't give the full sample because the test was given during a religious fast; and 3) that the testing policy was violated when he was denied an extra hour to submit a sample given his fluid intake was low due to the fast.

Hughes alleges that the urinalysis testing was conducted in an unreasonable manner. First, he alleges that he only had one-hour and forty minutes to submit the sample, not the two hours as required in the policy. (Petition at 4.) Although he gave the sample before the two hours had ended, he did have the entire two hours to finish the test. According to the record, the statements submitted by Sgt. Boyan all indicate that Hughes was given two hours to provide an adequate sample. (Ex. A & Ex. B.)

Second, Hughes alleges that he has a right to practice his religion, and that he was at a disadvantage for drug testing because his fluid intake was low due to his fasting during Ramadan. But, Hughes was asked to produce a sample at 7:43 a.m., less than two hours after he ate breakfast. Hughes contends that if he would have had a chance to drink water he could have completed the test,

3

however all of the evidence in the record is that he did in fact drink the water offered by the officers right before the test. (*See* Ex. A & Ex. B.)  Hughes's argument that he was unable to give the full sample because he was not drinking fluids during the day is without merit because no where does he establish that he asked for more time, more water, or that he couldn't produce a sample because he was dehydrated.

In sum, Petitioner only states that he is a Muslim and the request for a urine sample occurred during the month of Ramadan.  This in and of itself does not show a violation of any of the Petitioner's federally protected rights, including his right to practice his religion.

Third, Hughes argues that he fit into the criteria of those who are allowed an additional hour to produce a sample.  On appeal to the facility head Hughes submitted a statement from the doctor on staff at the prison which states it could take longer to produce a urine sample due to fasting, but that one would continue to produce urine.  (Ex. P2.)  Hughes requested the doctor's statement on December 15, 2003, almost a month after the CAB hearing, and more than a month after the urine test was conducted.  Hughes does not contend, and the record does not establish, that he asked the officers for an extra hour to produce a sample or informed them he could be dehydrated.  This argument has no merit.

Hughes does not argue that the safeguards of due process required by *Wolff v. McDonald*, 418 U.S. 539 (1974) were not met, only that prison regulations were violated.  Due process requires only that Hughes receive advance written notice of the charges, an opportunity to present testimony and documentary evidence to an impartial decision-maker, and a written explanation for the discipline which is supported by some evidence in the record.  *See Wolff*, 418 U.S. at 563-67; *Walpole v. Hill*, 472 U.S. 445 (1985); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).  So long

as those safeguards are met violations of prison policy are matters of state law beyond the scope of habeas corpus.  Any claim that the facility violated its own urine testing policy is not actionable in a habeas proceeding.  Additionally, Hughes has failed to state a claim that he was not allowed to practice his religion.

## CONCLUSION

For all the reasons stated, and because it is clear that none of Hughes's constitutional rights have been violated, this petition for relief under 28 U.S.C. §2254 is **DENIED.**

**SO ORDERED.**

ENTERED: May 13, 2005

                                          s/ Philip P. Simon
                                          PHILIP P. SIMON, JUDGE
                                          UNITED STATES DISTRICT COURT